UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER CONATY,<br><br>                  Petitioner,<br><br>    v.<br><br>WARDEN CHRISTENSEN,<br><br>                  Respondent. | Case No. 1:22-cv-00036-REP<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a Petition for Writ of Habeas Corpus, filed by Idaho prisoner Christopher Conaty ("Petitioner" or "Conaty"), challenging Petitioner's state court conviction for aggravated battery. (Dkt. 1.) The Petition is now fully briefed and ripe for adjudication. Respondent argues that Petitioner's claims fail on the merits and that one of his claims is procedurally defaulted.

The Court takes judicial notice of the records from Petitioner's state court proceedings. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 8.) Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d).

For the reasons explained below, the Court enters the following Order denying habeas corpus relief.

## BACKGROUND

The following facts of Petitioner's case, as described by the Idaho Court of Appeals, are presumed correct, absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1).

Petitioner was charged with aggravated battery committed on the grounds of a correctional facility, stemming from an incident in which he assaulted another inmate. He was also charged with a persistent violator sentencing enhancement. On the second day of trial, the judge declared a mistrial. Petitioner later pleaded guilty to aggravated battery in exchange for the dismissal of the persistent violator charge. (State's Lodging D-4 at 1–2.)

During his allocution, Petitioner related the following about the incident:

> THE COURT: Okay. If you will, sir, tell me in your own words what happened here and why did you inflict this beating upon [the victim] Mr. Martinez?
>
> THE DEFENDANT: Oh, well, me and Mr. Martinez had a personal issue and I -- and honestly I wasn't trying to break his face. I kind of just one kick to his face and after that one kick hit him in the face, is when I left his cell and that's when -- because I knew -- well, it just went all bad right there. And so it's not -- you understand? I guess what I'm saying is, yeah, I kicked him in the face and once too many. You know, I didn't kick him when he was on the ground but that one time, then I realized, oh, boy, that's a mistake I made right there. Because I knew it broke something. So...

THE COURT: All right. So to the best of your knowledge, how many times did you strike him? That is, by kicking and/or by hitting him?

THE DEFENDANT: Maybe like ten to 15 times. Because we were exchanging punches with each other and then he fell down and that's when I kicked him the one time in the face. And then that's when I realized, well, that that wasn't a good thing to do right there.

THE COURT: … you did this knowingly and willfully; is that right?

THE DEFENDANT: Yes, that's correct.

(State's Lodging A-3 at 21–22.) Petitioner was sentenced to fifteen years in prison with three years fixed.

Petitioner filed a post-conviction petition in state court, alleging that his trial counsel did not adequately prepare for the case or communicate with Petitioner. Trial counsel had "cancelled appointments, would not speak over the phone, and ultimately only met with him once, less than forty-five days before trial. Conaty attached two letters from his trial counsel, dated December 22, 2016, and February 21, 2017, in which she acknowledged cancelling an appointment and not yet meeting with Conaty in person." (*Id*. at 2.) Petitioner alleged that, if not for counsel's deficiencies, he would not have pleaded guilty.

The state district court dismissed the petition, concluding, "at a minimum," that Petitioner was not prejudiced by counsel's alleged deficiencies. (State's Lodging C-1 at 188; *see also id.* at 166–71.) The Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied review. (State's Lodging D-4; D-7.)

In his federal Petition, Petitioner asserts ineffective assistance of counsel in three respects. In Claim 1(a), he asserts that counsel did not adequately communicate with Petitioner prior to his trial. Specifically, trial counsel met with Petitioner only once, forty-five days before the trial. And, by that time, "all trial motions, witness lists where [sic] due." (Dkt. 1 at 6.) As explained earlier, however, the trial ended in a mistrial.

In Claim 1(b), Petitioner asserts that, after the mistrial, counsel "refused" to "get all that done before [the] new trial." This lack of preparedness allegedly caused Petitioner to plead guilty, instead of going to trial a second time, because Petitioner had lost confidence in counsel's abilities. (*Id.*)

Finally, Claim 1(c) asserts that counsel's ineffective assistance prior to trial and after—that is, the deficiencies alleged in Claims 1(a) and 1(b)—coerced Petitioner's guilty plea. Specifically, Petitioner claims that because knew his counsel would not do anything, as evidenced by his previous experience, he "had no choice" but to plead guilty. (*Id.*)

## DISCUSSION

The Court previously reviewed the Petition and allowed Petitioner to proceed on his claim to the extent the claim "(1) is cognizable—meaning it actually can be heard—in a federal habeas corpus action, (2) was timely filed in this Court, and (3) was either properly exhausted in state court or is subject to a legal excuse for any failure to exhaust in a proper manner." (Dkt. 9 at 2.)

Respondent now argues that Claim 1(c) is procedurally defaulted and that all three of Petitioner's sub-claims fail on the merits. Because the Court agrees that the claims fail

on the merits, under either deferential or de novo review, it need not address

Respondent's procedural default argument.

**1.     Standards of Law for Adjudication on the Merits**

A federal court may grant habeas corpus relief when it determines that the

petitioner "is in custody in violation of the Constitution or laws or treaties of the United

States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits,

habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and

Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief

must be denied unless the state court's adjudication of the petitioner's claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The term "unreasonable" in § 2254(d) is reserved for "extreme malfunctions in the

state criminal justice system," not for "ordinary error" or even for cases "where the

petitioner offers a strong case for relief." *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021)

(per curiam) (internal quotation marks omitted). Accordingly, a federal court reviewing a

state court's adjudication of a claim on the merits "must carefully consider all the reasons

and evidence supporting the state court's decision." *Id*. Courts are not permitted "to

essentially evaluate the merits *de novo* by omitting inconvenient details from its

analysis." *Id.* (internal quotation marks and alteration omitted). Instead, "[d]eciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and to give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (internal quotation marks and citations omitted).

When a petitioner contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. 415, 426 (2014) (emphasis omitted).

The AEDPA standard is extraordinarily high, and a federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong. Rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Williams*, 529 U.S. at 411. If there is *any* possibility that fair-minded jurists could disagree on the correctness of the state court's decision, § 2254(d)(1) precludes relief. *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013); *Harrington v. Richter*, 562 U.S. 86, 101–02 (2011). In other words, if one fair-minded jurist could agree that the state court's decision is reasonable, habeas relief must be denied—even other fair-minded jurists would disagree.

"Clearly established federal law" means the governing legal principles set forth in the holdings—not the dicta—of the United States Supreme Court, as of the time the state court rendered its decision. *Williams*, 529 U.S. at 412. The habeas statute does not require an *identical* factual pattern before a legal rule must be applied. Rather, state courts must reasonably apply the rules squarely established by the Supreme Court's holdings to the facts of each case. *See White*, 572 U.S. at 427.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Therefore, if (1) a claim was adjudicated on the merits in state court, and (2) the underlying factual determinations of the state court were not unreasonable, then evidence that was not presented to the state court cannot be introduced on federal habeas review. *See Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014) ("After *Pinholster*, a

federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2).").

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). Instead, state court factual findings are presumed to be correct and are binding on the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Kirkpatrick v. Chappell*, 950 F.3d 1118, 1131 (9th Cir. 2020) (holding that § 2254(e)(1) "appears to apply to all factual determinations made by state courts"). "If reasonable minds reviewing the record might disagree about the finding in question," the finding is not unreasonable under § 2254(d)(2). *Pizzuto v. Yordy*, 947 F.3d 510, 530 (9th Cir. 2019) (internal quotation marks and alterations omitted).

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to or an unreasonable application of Supreme Court precedent under subsection (d)(1), or by establishing the state court's decision was based on an unreasonable factual finding under subsection (d)(2)—then the federal

habeas court must review the petitioner's claim de novo, meaning without deference to the state court's decision.[1] *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014). Even under de novo review, however, if the factual findings of the state court are not unreasonable under § 2254(d)(2), the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167–68; *Kirkpatrick*, 926 F.3d at 1170 ("Unlike § 2254(d), § 2254(e)(1)'s application is not limited to claims adjudicated on the merits [by a state court].").

## 2.    Factual Basis of Petitioner's Claims

In his guilty plea advisory form, Petitioner stated that there were several things his attorney had not done, despite Petitioner's request. First, she failed to file a motion to dismiss. Second, she did not file a motion asserting "violations" during the preliminary hearing. Third, she did not call certain witnesses at trial. (State's Lodging A-1 at 154.)

During the change-of-plea hearing, the judge questioned Petitioner about these allegations:

> THE COURT: And I see, for example, in [the guilty plea advisory form] one of the issues that you're complaining about is that she [defense counsel] didn't call witnesses for your trial. Is that one of the issues that you have?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And things of that nature. Couple of points I want to make. You understand that in the law there's one principle that's kind of known as "no harm no foul"; so to speak. It's called the harmless error rule. So to the extent that

---

[1] De novo review is also required where the state appellate court did not decide a properly asserted claim or where an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

she didn't, for example, file motions or call witnesses at the
first trial that was ultimately declared a mistrial, that could be
a case where there's no harm no foul. You with me on that?

THE DEFENDANT: Yeah.

…

THE COURT: Okay. Now, as it relates to this case, did you
tell your lawyer everything you know about this case and the
people and the facts and circumstances so that she can give
you the best advice and counsel possible?

THE DEFENDANT: Yes.

THE COURT: Do you understand, sir, that lawyers are bound
by certain rules of ethics; meaning that they should not file
motions that they believe are frivolous and unreasonable?
You do understand that; don't you? Sounds like you don't.

THE DEFENDANT: Right.

THE COURT: I'll go through it more slowly.

THE DEFENDANT: Well, no. I understand what you said. I
got that. I'm saying I don't -- I feel that if I asked her to file a
motion, that she should have filed my motion.

THE COURT: And that's kind of what I'm getting to.
Lawyers are officers of the court, and they can lose their
license if they do the things that are unethical and improper.
You understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. And so otherwise, do you believe that
she satisfactorily explained everything to you?

THE DEFENDANT: Yes.

(State's Lodging A-3 at 15–17.)

Petitioner also told the court he was satisfied with the amount of time he had to

ask his lawyer questions about the plea agreement:

MEMORANDUM DECISION AND ORDER - 10

THE COURT: … [t]here's a lot of documents and things that a person needs to read in a situation like this. Did you get a chance to read those things to your full satisfaction?

THE DEFENDANT: Yes.

THE COURT: And did you have the time and opportunity to ask your lawyer any questions that you might have had about anything that you didn't understand?

THE DEFENDANTS: Yes.

(*Id*. at 11–12.)

And, when the court inquired whether Petitioner was entering the guilty plea

knowingly, intelligently, and voluntarily, Petitioner indicated that he was:

THE COURT: Now, outside the plea bargain agreement has there been any threats or coercion or is anybody forcing you to plead guilty against your will?

THE DEFENDANT: No.

THE COURT: Outside the plea bargain agreement are there promises or incentives or rewards to you or to anybody else to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: In this guilty plea advisory form you realize that you signed this under oath?

THE DEFENDANT: Yes.

THE COURT: Before you signed it, did you have sufficient time and opportunity to review it to your satisfaction?

THE DEFENDANT: Yes.

THE COURT: Did you sign this freely, voluntarily and truthfully and after satisfactory assistance and consultation with your lawyer?

THE DEFENDANT: Yes.

MEMORANDUM DECISION AND ORDER - 11

(*Id*. at 13–14.)

**3.      Petitioner's Ineffective Assistance Claims Fail on the Merits**

   *A.      Clearly Established Law Governing Ineffective Assistance of Counsel*
   *Claims*

The Sixth Amendment to the United States Constitution provides that a criminal

defendant has a right to the effective assistance of counsel in his defense. The Supreme

Court explained the standard for ineffective assistance claims in *Strickland v.*

*Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel

("IAC") must show that (1) "counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and

(2) those errors prejudiced the defendant by "depriv[ing] the defendant of a fair trial, a

trial whose result is reliable." *Id*. at 687. A petitioner must establish both deficient

performance and prejudice to prove an IAC claim. *Id.* at 697. On habeas review, a court

may consider either prong of the *Strickland* test first, or it may address both prongs, even

if one prong is not satisfied and would compel denial of the IAC claim. *Id.*

Whether an attorney's performance was deficient is judged against an objective

standard of reasonableness.  *Id.* at 687–88. A reviewing court's inquiry into the

reasonableness of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly
> deferential. It is all too tempting for a defendant to second-
> guess counsel's assistance after conviction or adverse
> sentence, and it is all too easy for a court, examining
> counsel's defense after it has proved unsuccessful, to
> conclude that a particular act or omission of counsel was
> unreasonable. A fair assessment of attorney performance
> requires that every effort be made to eliminate the distorting

> effects of hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the conduct
> from counsel's perspective at the time. Because of the
> difficulties inherent in making the evaluation, a court must
> indulge a strong presumption that counsel's conduct falls
> within the wide range of reasonable professional assistance;
> that is, the defendant must overcome the presumption that,
> under the circumstances, the challenged action might be
> considered sound trial strategy. There are countless ways to
> provide effective assistance in any given case. Even the best
> criminal defense attorneys would not defend a particular
> client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

If a petitioner shows that counsel's performance was deficient, he must also show that the deficient performance caused prejudice. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an
> ineffectiveness claim must consider the totality of the
> evidence before the judge or jury. Some of the factual
> findings will have been unaffected by the errors, and factual
> findings that were affected will have been affected in
> different ways. Some errors will have had a pervasive effect
> on the inferences to be drawn from the evidence, altering the
> entire evidentiary picture, and some will have had an isolated,
> trivial effect. Moreover, a verdict or conclusion only weakly
> supported by the record is more likely to have been affected
> by errors than one with overwhelming record support. Taking
> the unaffected findings as a given, and taking due account of
> the effect of the errors on the remaining findings, a court
> making the prejudice inquiry must ask if the defendant has

> met the burden of showing that the decision reached would
> reasonably likely have been different absent the errors.

*Id.* at 695–96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

To show prejudice based on deficient performance of counsel in a case where, as here, the petitioner pleaded guilty, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Stated another way, the petitioner must establish that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

The foregoing standard, giving deference to counsel's decision-making, is the de novo standard of review. Another layer of deference—to the state court decision—is afforded under AEDPA. In giving guidance to federal courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application
> of the *Strickland* standard was unreasonable. This is different
> from asking whether defense counsel's performance fell
> below *Strickland*'s standard. Were that the inquiry, the
> analysis would be no different than if, for example, this Court
> were adjudicating a *Strickland* claim on direct review of a
> criminal conviction in a United States district court. Under
> AEDPA, though, it is a necessary premise that the two
> questions are different. For purposes of § 2254(d)(1), "an
> unreasonable application of federal law is different from an
> incorrect application of federal law." *Williams*, *supra*, at 410,
> 120 S. Ct. 1495. A state court must be granted a deference
> and latitude that are not in operation when the case involves
> review under the *Strickland* standard itself.

MEMORANDUM DECISION AND ORDER - 14

*Richter*, 562 U.S. at 101. That is, when evaluating an IAC claim under § 2254(d), this

Court's review of that claim must be "doubly deferential." *Pinholster*, 563 U.S. at 190

(internal quotation marks omitted). Because *Strickland* itself "is a general standard, a

state court has even more latitude to reasonably determine that a defendant has not

satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Indeed, "the

more general the rule, the more leeway state courts have" in deciding constitutional

claims. *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (per curiam) (internal quotation marks

omitted).

> ### B.   The State Court's Rejection of Claims 1(a) and 1(b) Was Not Unreasonable under AEDPA

Addressing Petitioner's claim that counsel rendered ineffective assistance prior to

the trial (Claim 1(a)), the Idaho Court of Appeals determined that Petitioner could not

show prejudice under *Strickland*:

> After referencing his trial counsel's lack of communication,
> including meeting with her only once less than forty-five days
> before trial, Conaty's petition for post-conviction relief
> concluded that "[c]onsequently, he had lost confidence that he
> would be adequately represented if he had proceeded to trial"
> and accordingly entered a guilty plea. Upon review of
> Conaty's petition and the record, the district court held that
> *although Conaty "claimed that he did not feel confident to
> proceed to trial given his attorney's lack of communication …
> [,] the record is clear that he did in fact proceed to trial*,
> which ended in a mistrial." The district court found that
> Conaty was referring to the April 2017 trial when he asserted
> that he had only met with his trial counsel once before trial
> and that the two letters from Conaty's trial counsel were
> dated months before Conaty's April 2017 trial. *Because
> Conaty subsequently proceeded to trial despite the alleged
> communication deficiencies, the district court correctly
> concluded there was no genuine issue of material fact*

MEMORANDUM DECISION AND ORDER - 15

> *regarding the prejudice prong of Conaty's claim as it related*
> *to any lack of communication prior to the trial.*

(State's Lodging D-4 at 5 (emphasis added).)

As for Claim 1(b)—that counsel was not communicative or prepared during the period of time after the mistrial and before the guilty plea—the state court held that Petitioner had not established either deficient performance or prejudice. (*Id*.) The court found that the record refuted this claim:

> At the change of plea hearing, trial counsel indicated she had reviewed all the discovery with Conaty, advised him of his rights, considered all possible lawful defenses, and reviewed the plea agreement and all practical options with Conaty. *When asked by the district court if he had signed the guilty plea advisory form "freely, voluntarily and truthfully and after satisfactory assistance and consultation with" his trial counsel, Conaty affirmed that he had*. Conaty further agreed that his *trial counsel had "satisfactorily explained everything" to him*. Because Conaty provided no evidence of lack of communication and the record demonstrates otherwise, Conaty cannot establish deficient performance of trial counsel. Thus, the district court correctly concluded that there was no genuine issue of material fact regarding Conaty's claim of deficient performance.

(*Id*. at 5–6 (emphasis added).)

As to the prejudice prong, the state court held that Petitioner failed to show "he would have rejected the plea agreement (which reduced the possible length of prison time Conaty faced) and pursued a second trial but for trial counsel's alleged communication deficiencies." (*Id*. at 6.) The court noted that, other than his conclusory and self-serving statement that he "would not have pleaded guilty," Petitioner had not produced any evidence to support a claim of prejudice. (*Id*.)

MEMORANDUM DECISION AND ORDER - 16

These were reasonable applications of *Strickland*. The deficiencies alleged in Claim 1(a) plainly did not affect the outcome of the proceedings—and thus resulted in no prejudice—because Petitioner's trial ended in a mistrial. Because Petitioner was not convicted at that trial, he cannot rely on counsel's alleged pretrial errors.

Claim 1(b) also fails the prejudice prong of *Strickland*. The Idaho Court of Appeals correctly noted there was not a shred of evidence supporting a conclusion that, had counsel done everything Petitioner requested of her, he would have rejected the plea agreement and chosen instead to proceed to a second trial.

For these reasons, Claims 1(a) and 1(b) must be denied pursuant to 28 U.S.C. § 2254(d).

### C.    On De Novo Review, Petitioner is Not Entitled to Relief on Claim 1(c)

In Claim 1(c), Petitioner alleges that counsel's alleged deficiencies during the whole course of her representation gave him no choice but to plead guilty because he knew counsel would not perform adequately. The Idaho Supreme Court did not address this claim on the merits.[2] Therefore, this Court reviews the claim de novo. *See Hurles*, 752 F.3d at 778.

Claim 1(c) fails the prejudice prong for similar reasons as those set forth with respect to Claims 1(a) and 1(b). Petitioner simply has not produced any evidence that, but for the alleged errors by counsel, he would have rejected the favorable plea agreement in

---

[2] The Idaho Court of Appeals declined to address Claim 1(c) because it was not raised in the state district court and because it was not supported by argument or authority. (State's Lodging D-4 at 6.) This Court has decided not to review that holding.

favor of going to trial again. Thus, even on de novo review, Petitioner cannot establish *Strickland* prejudice.

## CONCLUSION

For the foregoing reasons, Claims 1(a) and 1(b) fail on the merits under AEDPA, and Claim 1(c) fails on de novo review. Accordingly, the Petition must be denied.

## ORDER

**IT IS ORDERED:**

1.      The Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED IN PART, and this entire action is DISMISSED with prejudice.

2.      The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED:  November 28, 2023

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge